**FEDERAL TRADE COMMISSION,**
**Petitioner-Appellant,**

**v.**

**John D. MacARTHUR and Bankers Life**
**and Casualty Co.,**
**Respondents-Appellees.**

**Nos. 75–1700, 75–1701.**

United States Court of Appeals,
Seventh Circuit.

Heard Jan. 13, 1976.

Decided April 1, 1976.

William T. Kirby, Chicago, Ill., Donald A. Derfner, New York City, for MacArthur.

Gerald Harwood, Asst. Gen. Counsel, F. T. C., Denis E. Hynes, Atty., Washington, D. C., for F. T. C.

Before SWYGERT and CUMMINGS, Circuit Judges, and EAST, Senior District Judge.*

CUMMINGS, Circuit Judge.

In June 1975, the Federal Trade Commission filed a petition for an order requiring John D. MacArthur and Bankers Life and Casualty Company[1] to honor a subpoena *duces tecum* issued by petitioner on October 1, 1974. The proceeding was filed pursuant to Section 9 of the Federal Trade Commission Act.[2]

In 1973, the Commission decided to conduct a non-public investigation to determine whether Bankers and others (apparently Bankers' affiliates and subsidiaries) were engaging in unfair or deceptive acts or practices in violation of Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45) in connection with the sale of subdivided land in Colorado.

In October 1974, a subpoena *duces tecum* was served upon respondents requiring them to testify and produce specified documents at an investigational hearing before a representative of the Commission in Chicago on November 4, 1974. Through negotiations of counsel, the return was reset for February 1975 in Lake Park, Florida, for the convenience of respondents and substituted Bankers' vice president, W. L. Cargill, for MacArthur on the ground that Cargill was more knowledgeable about the documents to be produced.

At the Florida investigational hearing, Bankers refused to submit documents responsive to Specifications 4(d), 4(e) or 5 of the subpoena on the ground that they were beyond the scope of the investigation. Only an unsworn copy of "certain" resolutions of the investment committee of Bankers' Board of Directors was submitted in response to Specification 4(c). Although other documents were produced, Mr. Cargill was unable to furnish much information about them.

The Commission then filed suit to enforce the subpoena, requesting the district court

---

\* Senior District Judge William G. East of the District of Oregon is sitting by designation.

1. The corporate respondent was added by the Federal Trade Commission's motion to amend the pleadings which was granted on June 25, 1975.

2. Section 9 of the Federal Trade Commission Act provides in pertinent part (15 U.S.C. § 49):

"That for the purposes of this [Act] the Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purposes of examination, and the right to copy any documentary evidence of any person, partnership or corporation being investigated or proceeded against; and the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission

may administer oaths and affirmations, examine witnesses, and receive evidence.

"Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

"Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any person, partnership or corporation, issue an order requiring such person, partnership or corporation to appear before the Commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof."

\* \* \* \* \* \*

to direct respondents to appear before a duly designated representative of the Commission "at a date, time and place to be determined by petitioner; and then and there to testify and produce all of the books papers, documents and other materials called for by Specifications 4(c), 4(d), 4(e), and 5 of the said subpoena *duces tecum*."

On June 25, 1975, the district court ordered the respondents to appear before it on July 8 to show cause why the Commission's petition should not be granted. On that date, Bankers appeared before Judge Will and denied that the court had subject-matter jurisdiction over the controversy. Alternatively, Bankers filed a motion to transfer the case to the United States District Court for the Southern District of Florida. The supporting affidavit of a New York lawyer for Bankers showed that Bankers' executive office for MacArthur, then 78 years old, was in Palm Beach County, Florida, where he maintained his residence. The affiant also stated that respondents intended to produce six Florida residents in opposition to the petition, that the Commission was expected to produce witnesses from its Kansas City, Missouri, regional office, and that no Chicago witnesses would be expected to appear. The affidavit also stated that substantially all the documentary evidence which respondents intended to introduce at the hearing on the petition was located in Bankers' Florida offices.

At the conclusion of oral arguments made by counsel for the parties on July 8, Judge Will ordered that Bankers comply fully with the Commission subpoena and appear before a representative of the Commission at a date, time and place to be determined by the Commission and produce all the documents called for by Specifications 4(c), 4(d), 4(e) and 5 located within the Northern District of Illinois and to give such testimony as might be required by the Commission in connection therewith. The district judge also ordered Bankers not to remove such records from the Northern District of Illinois. It transferred the portion of the case dealing with the records of MacArthur and the records of Bankers located out of the Northern District of Illinois to the United States District Court for the Southern District of Florida and further ordered that "no information obtained pursuant hereto be disclosed to the public except in connection with a public proceeding." Finally, Bankers' application for an evidentiary hearing was denied.

Thereafter the Commission appealed the district court's order to the extent it refused the production of documents beyond the confines of the Northern District of Illinois and to the extent that it contained a protective clause. Bankers cross-appealed, challenging the jurisdiction of the court and arguing that the court erred in denying its application for an evidentiary hearing and its motion to transfer the whole cause to the Southern District of Florida. The district court's order was subsequently stayed in its entirety pending this appeal.

*Jurisdiction of District Court*

Bankers first urges that the district court lacked subject-matter jurisdiction because paragraph 3 of Section 9 of the Federal Trade Commission Act (note 2 *supra*) only confers enforcement jurisdiction on a district court "within the jurisdiction of which such inquiry is carried on," whereas, Bankers claimed, no inquiry was being carried on within the Northern District of Illinois. We reject that argument.

Section 3 of the Federal Trade Commission Act empowers the Commission to "prosecute any inquiry necessary to its duties in any part of the United States" (15 U.S.C. § 43), and Section 6(a) of the Act empowers it to "gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any * * * corporation engaged in or whose business affects commerce * * * and its relation to other persons, partnerships and corporations" (15 U.S.C. § 46(a)). The Commission's resolution of November 6, 1973, defined the nature and scope of its investigation as being "To determine whether or not various sellers of subdivided

land and others may have been or may now be engaged in unfair methods of competition" in violation of Section 5 of the Trade Commission Act. The investigation was not limited to any particular judicial district, and the Commission's subpoena ordered MacArthur, as president of Bankers, to appear before a named attorney of the Federal Trade Commission in Chicago on November 4, 1974, and to produce the documents described in the Specifications attached to the subpoena. The subpoena was issued by the regional director of the Commission's Kansas City, Missouri, office on October 1, 1974.

At the oral argument, we were told that the investigation was first assigned to the Commission's Kansas City, Missouri, office and then to its Denver, Colorado, office, but that the "inquiry" mentioned in paragraph 3 of Section 9 of the Federal Trade Commission Act is being carried on "in Chicago and other places." Since Bankers refused to produce documents within Specifications 4(d), 4(e) and 5 of the subpoena, and may have produced incomplete resolutions in response to Specification 4(c), the Commission decided to seek enforcement of its subpoena in Chicago, Illinois, where Bankers' documents are said to be located and its general offices are located.

■ These steps taken by the Commission are sufficient to show that an inquiry is being conducted in Chicago. The test whether the Commission is undertaking an inquiry in a particular place is whether that place and the activities occurring there bear a reasonable relation to the subject matter of the investigation. Factors such as the convenience of the Commission, the location of documents and witnesses, and the corporate headquarters of the company are relevant in determining whether there is an inquiry in a particular judicial district when the only action taken by the Commission is a request for information. As in other areas, the Commission's choice of a place of inquiry is subject to the bound of reasonableness. *United States v. Morton Salt Co.,* 338 U.S. 632, 652–653, 70 S.Ct. 357, 368–369,

94 L.Ed. 401, 415–416; *Adams v. Federal Trade Commission,* 296 F.2d 861, 866 (8th Cir. 1961), certiorari denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83. This limit has not been exceeded here.

Applying the reasonably related standard to the present situation, we are convinced that the use of "such inquiry" in paragraph 3 of the statute does not here exclude the Northern District of Illinois. Paraphrasing Judge Bonsal's opinion in *Federal Trade Commission v. Green,* 252 F.Supp. 153, 155 (S.D.N.Y.1966):

> "Even if consideration is limited to that portion of the inquiry relating to [Bankers, Chicago] is a place where the inquiry is being carried on for [Bankers] has its principal place of business [there] and presumably the documents sought by the Commission are located [there]."

■ Our conclusion is not altered because other Commission offices are involved in the investigation. It was permissible for the subpoena to emanate from the Commission's Kansas City office, with the return to be at its Chicago office, for paragraph 2 of Section 9 (note 2, *supra*) allows the Commission to require the "attendance of witnesses, and the production of such documentary evidence, * * * from any place in the United States, at any designated place of hearing." The next sentence of that paragraph permits the Commission to "invoke the aid of any court of the United States, in requiring the attendance and testimony of witnesses and the production of documentary evidence." Congress has given the Commission broad investigatory powers. *United States v. Morton Salt Co., supra,* 338 U.S. at 641–643, 70 S.Ct. at 363–364, 94 L.Ed. at 410–411; *Federal Trade Commission v. Manager, Retail Credit Co.,* 169 U.S.App.D.C. 271, 515 F.2d 988, 993 (1975). Consistent with those powers is the power of the Commission to decide where to conduct an inquiry. The jurisdiction of the particular district court, as provided in the statute, follows from that decision. *Federal Trade Commission v. Sherry,* 1969 Trade Cases ¶ 72,906 (D.D.C.1969); *Federal Trade*

*Commission v. Green, supra,* 252 F.Supp. at 155.

This holding does not conflict with *Federal Trade Commission v. Browning,* 140 U.S. App.D.C. 292, 435 F.2d 96 (1970), on which Bankers relies. In that case, the designated place of hearing was Washington, D. C., and the court stated that Washington, D. C. "is thus necessarily a place where the 'inquiry is carried on'" within the third paragraph of Section 9 of the Act. Here the designated place of hearing was Chicago, Illinois, and thus by parity of reasoning, it is necessarily one of the places where the inquiry is carried on.

■ In opposition to the jurisdiction of the court below, Bankers asserts that the subpoena was amended to be returnable at Lake Park, Florida, so that there was no longer any Illinois "inquiry." However, the subpoena proper was never amended. Lake Park, Florida, was chosen as a substitute return place by informal agreement of counsel (Exhibit 3 to petition). In any event, the fact that an inquiry was conducted in Florida does not preclude the Commission from also conducting an inquiry in other parts of the country. Since compliance with the subpoena in Florida was not to the satisfaction of the Commission, it was entitled to attempt to enforce the October 1st subpoena which designated Chicago, Illinois, as the place of hearing. The Commission should not be required to go to each jurisdiction where documents are supposedly kept to secure enforcement of a subpoena when Section 9 of the Act allows the Commission to require the production of records from anywhere in the United States at any designated place of hearing. We hold that sufficient "inquiry" was being carried on in Illinois to confer jurisdiction on the court below under Section 9 of the Act.

*Failure to Hold an Evidentiary Hearing*

Although the district court held an adversary hearing before issuing the contested order, respondents assert that they were entitled to an evidentiary hearing. At the proposed evidentiary hearing, respondents state that they would have shown:

(1) There was no "inquiry" in the Northern District of Illinois, as required by the third paragraph of Section 9 of the Federal Trade Commission Act.

(2) The Commission is already in possession of a "vast quantity" of subpoenaed documents.

(3) Bankers' role in the Colorado land sales was only that of a mortgagee and financier; Bankers never engaged in the offer or sale of the Colorado land.

In our view, an evidentiary hearing would have been inappropriate with respect to these subjects.

As to the first of the above topics, part 1 of this opinion has resolved this legal question on undisputed facts.

■ As to the second and third topics, Bankers has failed to make a substantial challenge to the validity of the subpoena on issues requiring the district court to hold an evidentiary hearing. *United States v. Newman,* 441 F.2d 165, 168 (5th Cir. 1971). Rule 81(a)(3) makes the Federal Rules of Civil Procedure applicable to this action. Under those rules there is no requirement that the court hold an evidentiary hearing in all cases. Nor does "due process" require that the court take the testimony of witnesses in all situations. See *Mathews v. Eldridge,* —— U.S. ——, ——, 96 S.Ct. 893, 902, 903, 47 L.Ed.2d 18, 32, 33, 34, 44 L.W. 4224, 4229. In a summary enforcement proceeding, the burden is on the respondent to demonstrate the insufficiency of the petition. *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112, 119–120; *United States v. Newman, supra,* 441 F.2d at 169; *Federal Trade Commission v. Standard American, Inc.,* 306 F.2d 231, 235 (3d Cir. 1962). Before the district court need hold an evidentiary hearing, the respondent must show that there are disputed questions of fact whose resolution would warrant refusing enforcement of the subpoena. *United States v. Newman, supra,* 441 F.2d at 168. Bankers has not met this standard.

It is immaterial that the Commission already has a substantial quantity of the documents subpoenaed because the petition for

enforcement is limited to matters where there has been no submission in three instances and possibly an incomplete submission in the fourth.[3] In the adversary hearing, Bankers offered no facts to show either that complying with the subpoena would be unduly burdensome (cf. *Federal Trade Commission v. Standard American, Inc., supra*, 306 F.2d at 235) or that the material is clearly irrelevant to the proposed investigation. *Genuine Parts Co. v. Federal Trade Commission*, 445 F.2d 1382, 1391 (5th Cir. 1971). It was not error to refuse an evidentiary hearing.

 Bankers' final claim that it is only a mortgagee and financier in the questioned transactions is an issue to be resolved by the Commission. As a matter of law, this assertion, even if true, is not a proper defense to the petition. *Federal Trade Commission v. Gibson*, 460 F.2d 605, 608 (5th Cir. 1972); *Federal Trade Commission v. Hallmark, Inc.*, 265 F.2d 433, 438–439 (7th Cir. 1959); see *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614, 632–33.

At the adversary hearing, the district court satisfied itself that the investigation and subpoena "were legally authorized and properly motivated, and for a purpose related to the Commission's powers." Since respondents' proposed evidence would not have shown that the Commission was exceeding or abusing its investigative powers, an evidentiary hearing was not needed. *Securities & Exchange Commission v. Howatt*, 525 F.2d 226, 229–230 (1st Cir. 1975); *United States v. Newman, supra*, 441 F.2d at 168–169. No exceptional circumstances have been elicited to necessitate an evidentiary hearing. Therefore, the summary proceeding before the district court sufficed. *Donaldson v. United States*, 400 U.S. 517, 528–529, 91 S.Ct. 534, 541, 27 L.Ed.2d 580, 587–88; *United States v. Turner*, 480 F.2d 272, 275 (7th Cir. 1973); *Federal Trade Commission v. Sherry, supra*, 1969 Trade Cases ¶ 72,906 at p. 87, 455 (D.C.Cir. 1969).

### Propriety of Limiting Enforcement Order to Documents in Northern District of Illinois

 The district court refused to enforce the subpoena with respect to documents outside the Northern District of Illinois because of doubts as to its authority to order the production of such documents and because of the judge's feeling that contempt citations should take place where the documents are located. Neither reason supports the refusal to enforce the subpoena as to such documents. Paragraph 2 of Section 9 of the Federal Trade Commission Act authorizes the Commission to secure the production of documentary evidence from any place in the United States and to invoke the aid of any district court of the United States in case of disobedience to a subpoena. The language of the statute confers upon the court the power to enforce the subpoena without regard to the location of the documents. See *Federal Maritime Commission v. DeSmedt*, 366 F.2d 464, 469–471 (2d Cir. 1966), certiorari denied, 385 U.S. 974, 87 S.Ct. 513, 17 L.Ed.2d 437. The power conferred by the statute is consistent with the court's general authority to enforce its orders against those over whom it has *in personam* jurisdiction. (*United States v. First National City Bank*, 396 F.2d 897, 900–901 (2d Cir. 1968); *Elder-Beerman Stores Corp. v. Federated Department Stores, Inc.*, 45 F.R.D. 515, 516 (S.D.N.Y. 1968)) This authority includes use of contempt sanctions. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627; *United States v. Fidianian*, 465 F.2d 755, 757 (5th Cir. 1972), certiorari denied, 409 U.S. 1044, 93 S.Ct. 540, 34 L.Ed.2d 494. The court below should have enforced the relevant parts of the subpoena *in toto*.

Any contrary holding would defeat the Commission in its attempt to secure documentary evidence, for it would require the Commission to enforce its subpoena in every district in which documents are located. This would be contrary to Section 9. As

---

**3.** As shown above, there were no documents submitted in response to subpoena Specifica-

tions 4(d), 4(e) and 5 and a possibly incomplete submission with respect to Specification 4(c).

stated in *Federal Trade Commission v. Browning, supra,* 435 F.2d at 100:

> "It makes for uniformity of the application of the law [Federal Trade Commission Act] and economy of judicial administration to enter the enforcement proceedings in a single court."

Therefore the district court should have required the respondents to produce their outside records in the Northern District of Illinois, thus obviating any Florida proceedings.

## Imposition of Protective Order

█ The court below *sua sponte* ordered the Commission not to disclose information obtained through the subpoena to the public "except in connection with a public proceeding." The Commission's rules prohibit such disclosure without permission of the Commission. 16 C.F.R. § 4.10(c). Sanctions are provided in Section 10 of the Federal Trade Commission Act (which imposes a maximum fine of $5,000, maximum imprisonment of one year, or both) for unauthorized disclosure of information obtained by the Commission (15 U.S.C. § 50). In the case of this non-public investigation and without any showing of good cause, the imposition of a protective order was uncalled for. *Federal Trade Commission v. United States Pipe & Foundry Co.,* 304 F.Supp. 1254, 1260 (D.D.C.1969); *Federal Trade Commission v. Green, supra,* 252 F.Supp. at 157.[4]

## Partial Transfer of Proceedings

█ In its order, the district court transferred to the Southern District of Florida a portion of the case dealing with all MacArthur's records and those records of Bankers located outside the Northern District of Illinois. Under the statute authorizing the transfer (28 U.S.C. § 1404(a)), the district court is to weigh, among other factors, the convenience of the witnesses and the parties, the costs of the transfer, the public interest involved and any special circumstances present in the case. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; *Starnes v. McGuire,* 168 U.S.App.D.C. 4, 512 F.2d 918, 925 (1974) (en banc). Each case must be examined on its own facts. *Starnes v. McGuire, supra,* 512 F.2d at 925; *Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir. 1967).

█ The principal reason given in the affidavit supporting respondents' motion to transfer was that an evidentiary hearing on the petition for enforcement would be more convenient to the parties and witnesses in the Southern District of Florida. However, we have held that respondents are not entitled to an evidentiary hearing, so that the keystone to their transfer motion has crumbled. Further, as a result of this order, duplications and possible conflicts between the two district courts could occur. For such reasons, partition of the "pre-trial" processes is undesirable. As the Judicial Panel on Multidistrict Litigation stated in *In re Plumbing Fixture Cases,* 298 F.Supp. 484, 495 (1968), an action should not be split between two districts. See *Bristol Laboratories v. Richardson,* 456 F.2d 563 (1st Cir. 1971); *Pfizer, Inc. v. Lord,* 447 F.2d 122, 125 (2d Cir. 1971); *Wyndham Associates v. Bintliff,* 398 F.2d 614, 618 (2d Cir. 1968), certiorari denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438. In this posture, the motion to transfer should have been denied in its entirety.[5]

The order is reversed insofar as it transfers a portion of the case to the Southern District of Florida and imposes a non-disclosure clause. The order is affirmed in all other respects, except that enforcement shall not be limited to documents located

---

4. There has been no claim of confidentiality as to these documents. Consequently, *Federal Trade Commission v. Texaco, Inc.,* 517 F.2d 137, 151 (D.C.Cir. 1975), and *Federal Trade Commission v. Continental Can Co.,* 267 F.Supp. 713, 716 (S.D.N.Y.1967), are inapt.

5. Mr. MacArthur was subpoenaed "in his representative capacity" as custodian of the documents. (See the Commission's June 25, 1975, motion to amend the pleadings and the remarks of its counsel at the June 25, 1975, and July 8, 1975, proceedings below.) Our affirmance does not require his presence in Illinois. A suitable substitute will suffice. If the parties should agree on production in Florida, our mandate will not stand in the way.

within the Northern District of Illinois; costs to petitioner.