The UNITED STATES of America,
Petitioner,

v.

TESORO PETROLEUM CORPORATION
et al., Respondents.

Misc. No. 80–0217.

United States District Court,
District of Columbia.

Oct. 23, 1980.

Alice Daniel, Asst. Atty. Gen., R. John Seibert, Peter William Waldmeir, Attys., Dept. of Justice, Washington, D. C., for petitioner; David L. Anderson, Mayer Magence, Carey R. De Moss, Mark Kreitman, Attys., Dept. of Justice, Washington, D. C., of counsel.

Fred W. Drogula, Gary J. Klein, Ira T. Kasdan, Washington, D. C., for respondents; Stephen Poppoon, Dallas, Tex., of counsel.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This action is brought by the United States on behalf of Charles W. Duncan, Jr., Secretary of the Department of Energy, wherein the Court is petitioned to issue an order requiring compliance with a subpoena *duces tecum* issued to Tesoro Petroleum Corporation (Tesoro) and Dean M. Bloyd, its Group Vice–President (hereafter included in references to Tesoro), on June 13, 1980 and modified on June 25, 1980. Arising out of the Department of Energy's (DOE's) enforcement of the Mandatory Petroleum Allocation and Price Regulations, 10 C.F.R. Parts 210–212 (the Regulations), and underlying statutes, the subpoena requires production of accounting records and other documents allegedly needed by DOE to determine whether Tesoro, as a major refining company, has complied with the Regulations. Within DOE, the entity concerned with the audit of Tesoro is the Office of the Special Counsel for Compliance (OSC).

The parties' filings reflect a long history of disputes and impasses ever since a resident team of DOE auditors began, at Tesoro's offices in San Antonio, Texas, to analyze whether Tesoro was in compliance with the Regulations. The review has already spanned six years, spawning detailed audit inquiries and requests for production of documents. Since Tesoro's production in May, 1979 of 23 file boxes of material, the parties have reached few compromises and Tesoro has provided no other significant amount of documentation.

Responding to an Order to Show Cause why the petition should not be granted, respondents have moved to dismiss the petition for lack of jurisdiction or, in the alternative, have sought a change of venue. Simultaneously, they have asked for a modification of the Order to allow limited dis-

covery. Petitioner has opposed such motions and the matter was submitted following a hearing. For the reasons that follow, respondents' motions to dismiss the petition, to change venue, and to allow limited discovery will be denied. The petition will be granted and the subpoena *duces tecum* will be enforced according to the terms of this Memorandum Opinion.

Petitioner asserts that the authority of OSC to issue and to seek enforcement of the instant subpoena is conferred by section 645 of the Department of Energy Organization Act of 1977 (DOEOA), 42 U.S.C. § 7255, which provides in pertinent part:

[F]or the purpose of carrying out the provisions of this Act, the Secretary or his duly authorized agent or agents, shall have the same powers and authorities as the Federal Trade Commission under section 9 of the Federal Trade Commission Act with respect to all functions vested in, or transferred or delegated to, the Secretary or such agents by this Act.

Thus, DOE is granted the authority to issue subpoenas "[requiring the] attendance of witnesses, and the production of such documentary evidence, ... from any place in the United States, at any designated place of hearing," Federal Trade Commission Act (FTCA) § 9, 15 U.S.C. § 49 (Section 9), and to invoke the aid of any court of the United States in requiring such compliance. To effectuate these transferred powers, Section 9 further provides that "[a]ny of the district courts of the United States within the jurisdiction of which such inquiry is carried on" may enforce the subpoena. *Id.*

Respondents challenge petitioner's reliance on Section 9. Although Tesoro concedes that DOE has broad subpoena power and recognizes the far–reaching authority granted to the Secretary of DOE under 42 U.S.C. § 7255 of the DOEOA, it contends that the power to issue subpoenas does not imply co–extensive extra–territorial jurisdiction to a district court petitioned to enforce a DOE subpoena. Only specific statutory language, Tesoro maintains, can be held to grant this court jurisdiction to enforce a subpoena issued for persons and materials located outside the District of Columbia. Neither of the cases cited by respondents,[1] however, appears to prohibit judicial recognition of congressional intent with respect to the jurisdiction of the district courts.[2]

The parties concur that this Circuit's decision in *Federal Trade Commission v. Browning*, 435 F.2d 96, 99 (D.C.Cir.1970), interpreted Section 9 as providing particular federal courts within the jurisdiction where an FTC inquiry is being conducted with "an implied grant of authority for extra–territorial service of process in order to effectuate the purpose of the regulatory scheme." It is unquestioned that under Section 9, *in personam* jurisdiction over the parties outside the jurisdiction of the enforcement proceedings can attach by this power of extra–territorial service of process implied from the broad investigatory powers given the FTC by Congress. *Id.* at 98–101.

Whether a district court has the power of extra–territorial service of process in DOE enforcement proceedings under 42 U.S.C. § 7255 apparently has not been addressed squarely by a court. Petitioners urge implication of that power from 42 U.S.C. § 7255 and from section 9 of the FTCA. Respondents counter with the general rule that the jurisdiction of a district court is territorially limited unless Congress specifically provides otherwise. Fed.R.Civ.P. 4(f). Because Tesoro was served at its Texas headquarters, it urges that the service was ineffective to give this Court *in personam* jurisdiction. Accordingly, respondents' primary argu-

1. *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); *Berlanti Constr. Co. v. Republic of Cuba*, 190 F.Supp. 126 (S.D.N.Y. 1958).

2. The Senate report upon which § 645 was based states, "This section grants the Secretary the power to issue subpena [*sic*] in carrying out the provisions of this Act. The power is the same granted to the Federal Trade Commission in section 9 of the Federal Trade Commission Act...." S.Rep.No. 95–164, 95th Cong., 1st Sess. 50, *reprinted in* [1977] U.S.Code Cong. & Ad. News 854, 904.

ment is that unless Congress has passed a law that directly addresses the district courts' jurisdiction, no court can imply a deviation from that strictly territorial jurisdiction.

■ This argument is clearly flawed. The language of the DOEOA regarding subpoena enforcement powers incorporates the language of the FTCA; it does not merely model that act. It would be logical to imply, then, a congressional intent to give DOE the same powers as those given to the FTC.

Statutory expression almost identical to Section 9 was considered in *Federal Election Commission v. Committee to Elect Lyndon La Rouche*, 613 F.2d 849 (D.C.Cir. 1979), *cert. denied* 444 U.S. 1074, 100 S.Ct. 1019, 62 L.Ed.2d 756 (1980). The court in *La Rouche* held that the district court in a proceeding to enforce a Federal Election Commission (FEC) subpoena had *in personam* jurisdiction over the non–resident respondents under 2 U.S.C. § 437d(b).[3] Adopting the reasoning of *Federal Trade Commission v. Browning*, 435 F.2d 96 (D.C. Cir.1970), the court noted that despite the absence of an affirmative grant of extra–territorial jurisdiction in the statute, such a grant was implied from the statutory language. *La Rouche* 613 F.2d at 860.

■ There are manifold justifications for holding that this court has extra–territorial jurisdiction in an enforcement proceeding of this type. Without extra–territorial service of process, an agency would have to sue in every district where witnesses or documents were located in order to enforce its subpoenas. Such fragmentation of an investigation would frustrate an agency's purpose of maintaining coherent, nationwide supervision over the subject matter of its regulatory efforts, *see La Rouche, Browning,* depriving a regulatory scheme of expected orderly process consistent with "uniformity in the application of the law and economy of judicial administration." *Browning,* 435 F.2d at 100. Extra–territorial service also avoids the situation where a district court would have exclusive jurisdiction over an enforcement proceeding and yet be deprived of the authority to compel the attendance of the respondent absent his voluntary entrance into the district. *See id.* at 99.

In sum, the power of DOE, equal to that of the FTC, to subpoena witnesses and documents related to its investigations is given its full effectiveness only by recognizing the validity of extra–territorial jurisdiction in DOE enforcement proceedings, thereby promoting judicial economy, facilitating an orderly regulatory scheme, and avoiding the classic anomaly of jurisdiction without corresponding power.

Statutes, public policy, case law and rational interpretation compel the conclusion that Congress intended to grant to the district court in which a DOE enforcement proceeding is brought the power of extra–territorial *in personam* jurisdiction. *See La Rouche, Browning.* Service of process, therefore, on respondents Tesoro and Bloyd, was valid, with *in personam* jurisdiction in this district court.[4]

■ Tesoro contends further that this court lacks subject matter jurisdiction under 42 U.S.C. § 7255 because the vast majority of the audit activities have occurred in San Antonio, Texas. In the alternative, it seeks transfer of the action to the Western District of Texas where, respondents apparently concede, subject matter jurisdic-

---

3. 2 U.S.C. § 437d(b) provides in relevant part:
    Upon petition by the Commission, any United States district court within the jurisdiction of which any inquiry is being carried on may, in case of refusal to obey a subpoena or order of the Commission ..., issue an order requiring compliance. Any failure to obey the order of the court may be punished by the court as a contempt thereof.

4. Respondents have also asserted that the petition should be dismissed because Tesoro lacks the requisite minimum contacts with the District of Columbia necessary to establish personal jurisdiction under *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court does not reach this question because of its determination that its extra–territorial jurisdiction over Tesoro is proper.

tion lies. Petitioner argues that the District of Columbia, as the center of DOE's authority and decision–making, is the place from where the inquiry into Tesoro is being carried on.

Section 9 of the FTCA provides, as incorporated in the DOEOA, that the DOE will have the power to enforce its subpoenas in the district court in the jurisdiction in which "the inquiry is being carried on." The determination of the locale of the inquiry is governed by a standard of reasonableness. In *Federal Trade Commission v. MacArthur*, 532 F.2d 1135 (7th Cir. 1976), the court set forth the applicable test as "whether that place and the activities occurring there bear a reasonable relation to the subject matter of the investigation." *Id.* at 1140. *MacArthur* lists a number of factors to be considered, including the convenience of the issuing agency, the location of the documents and witnesses, and the location of the corporate headquarters of the entity subpoenaed. *La Rouche* also directs the Court to consider, in addition to the *MacArthur* factors, the place where the particular inquiry was authorized and where the agency found reason to believe that a violation had occurred, the place where the subpoena was issued, and the place where correspondence concerning the inquiry had emanated. *La Rouche*, 613 F.2d at 857.

More than one court could have subject matter jurisdiction, as *La Rouche* confirms:

> To say that the Commission's inquiry was being carried on in the District of Columbia is not to say that it was not also being carried on in New York.... Certainly, given the facts .... the Commission probably could have brought this action to enforce its subpoenas in [New York]. But the Commission chose not to do so, and we honor its choice....

613 F.2d at 858 n.9. Clearly, the District of Columbia *may* be the proper court for this inquiry notwithstanding the occurrence of

substantial activity in San Antonio, Texas. Under the standard of reasonableness, therefore, we examine whether the "inquiry is being carried on" in this district.

Petitioner's affidavits demonstrate that much of the activity concerning the Tesoro audit has occurred in the District of Columbia. The central headquarters of DOE and the offices of the officials ultimately responsible for the enforcement of the Regulations are located there. All authority to conduct audits of the major refiners emanates under the Regulations from the Washington headquarters of DOE. (Landesman Aff. ¶ 4). The national office of OSC is in the city of Washington at DOE headquarters, and from time to time it has issued instructions to DOE's San Antonio office, which has been conducting the inquiry at Tesoro's headquarters. (Tolson Aff. ¶ 23.) The decision to issue the subpoena was made in the District of Columbia, as was the decision to petition this court for its enforcement. (Tolson Aff. ¶ 30.)[5]

Respondents contend that to find that this district is the place where the inquiry is carried on would be unreasonable because of the intensive work occurring in San Antonio. The affidavits submitted show that prior document productions have occurred in San Antonio, that all requests for production have been issued in San Antonio, that most meetings and negotiations have taken place in San Antonio, and that, until the issuance of the subpoena in controversy here, the San Antonio office had supervisory control over the audit.

Respondents argue that the issuance of the subpoena in Washington, D.C. is insufficient, by itself, to give this court subject matter jurisdiction. Although one federal court has so held,[6] that fact is but one of the considerations ultimately pointing to the District of Columbia as the proper jurisdiction. In addition, *La Rouche* clearly per-

---

5. Presumably, after the audit is completed, DOE in the District of Columbia on will decide whether Tesoro has in fact complied with the Regulations, and if not, what sanctions should be requested.

6. *Federal Trade Commission v. Western General Diaries, Inc.*, 432 F.Supp. 31 (N.D.Cal.1977).

mits a court to consider the place where the subpoena was issued. *See La Rouche* 613 F.2d at 857. Respondents also claim that the shift of authority to the District of Columbia was merely an attempt to buttress the propriety of a Washington enforcement proceeding. The mere change of a label as to who has authority over an agency matter should not be determinative as to jurisdiction, and although it appears that the Washington office delegated some authority to San Antonio, significantly it retained ultimate control over the Tesoro audit. Thus, both San Antonio and Washington may be proper places to bring this action. *See La Rouche*, 613 F.2d at 858 n.9.

It is reasonable, accordingly, to conclude that the inquiry is being carried on in the District of Columbia. With proper jurisdiction in this court, the motions to dismiss for lack of subject matter jurisdiction and for a change of venue will be denied.

■ Respondents have moved to modify the Order to Show Cause to allow limited discovery of OSC on the issues of good faith, harassment, and jurisdiction. Respondents bear a heavy burden to show very good cause or extreme circumstances justifying further inquiry into the propriety of the subpoena. *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, at 1371 (D.C.Cir.1980); *United States v. Exxon Corp.*, 628 F.2d 70 at 77 n.7 (D.C.Cir.1980).[7] It is not unusual for allegations of bad faith, harassment, and improper purpose to be made against regulatory agencies in connection with administrative investigations, which claims must be buttressed with specific facts. *United States v. Church of Scientology*, 520 F.2d 818, 824 (9th Cir. 1975); *United States v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970).

Simply declaring that the subpoena was issued for an improper purpose, i. e., to force Tesoro to make concessions on discovery matters not covered by the subpoena, and that OSC is enforcing the subpoena because Tesoro has not been willing to comply with OSC's requests for voluntary production of materials, falls short of meeting respondents' heavy burden to prove that special circumstances justify discovery here.

Respondents' affidavits do not demonstrate that OSC has acted improperly. The agency's desire to enforce the subpoena arose after negotiations over the subpoena could not produce a settlement satisfactory to OSC. There appears to be no harassment, bad faith, or improper purpose in this circumstance where the agency's attempt to settle the dispute has not succeeded to its satisfaction.

■ It is unquestioned that the Court can modify the terms of the subpoena to avoid overbreadth. *United States v. Exxon Corp.*, 628 F.2d 70 at 77 (D.C.Cir.1980). Specifications 7 and 8 of the subpoena do appear unusually broad, seeking "all documents which set forth or relate to each of Tesoro's transactions" for certain periods. Petitioner's counsel has indicated that these specifications seek those materials kept pursuant to 10 C.F.R. § 210.92, which Tesoro is required by the Regulations to turn over in the event of a DOE audit. To avoid confusion and to proceed more reasonably, yet in keeping with its purpose, specifications 7 and 8 of the subpoena will be enforced to the extent they request records kept by Tesoro pursuant to applicable regulations.

■ Petitioner, through counsel, has requested that Tesoro index the documents provided to avoid inability to identify them with the appropriate subject area. Although the court agrees with Tesoro's position that it is not charged with doing the petitioner's auditing work, nor does it have to index thoroughly or cross–reference the documents it produces, it is also evident that enormous production without some comprehensive, related flagging of its contents is a disservice to all, showing only token obeisance to the letter of the law, if even that. To facilitate compliance with

---

7. *See also Federal Election Commission v. Committee to Elect Lyndon La Rouche*, 613 F.2d 849, 862–64 (D.C.Cir.1979), *cert. denied* 444 U.S. 1074 (1980); *United States v. Church of Scientology*, 520 F.2d 818, 825 (9th Cir. 1975); *Federal Trade Commission v. Sherry*, 1969 Trade Cases (CCH) ¶ 72,906 at 87,454–87,456 (D.D.C.1969).

the aims of the subpoena, Tesoro will be directed to identify each document, but only in such manner as to make immediately obvious to the reader the specification or subspecification pursuant to which that document is produced. This requirement is, of course, in addition to any other indexing requirements otherwise mandated.[8]

The petition for enforcement of the subpoena will be granted subject to the qualifications noted in this Memorandum Opinion. The motions to dismiss for lack of jurisdiction, change of venue, and limited discovery shall be denied.

---

**8.** This indexing requirement also applies to the documents requested in the subpoena that may have been produced with Tesoro's 1979 production. Tesoro need not duplicate submission of any documents already provided to DOE if those documents presently comport with the indexing requirement imposed herein.

Counsel have also discussed Tesoro's computer accounting system because some of the materials requested in hard copy are available to DOE in respondent's computer. Those materials that can be provided by the computer need not be produced on paper providing that as produced on the computer they are substantially similar to that which would have been produced as hard copy, and provided that the information produced by the computer is consistent with the indexing standards imposed herein.