GRIFFITH, Circuit Judge,
dissenting.
The subpoena enforcement statute for the National Labor Relations Board (“NLRB” or “Board”), 29 U.S.C. § 161(2), authorizes the Board to enforce its subpoenas in a jurisdiction in which its “inquiry is carried on,” which we have previously determined encompasses the location of an agency office investigating alleged wrongdoing. Here, that office is in the District of Columbia. The majority, however, concludes that Federal Election Commission v. Committee to Elect Lyndon La Rouche, 613 F.2d 849 (D.C.Cir.1979), contains a “clear requirement that an investigation must be nationwide in scope” in order to enforce a subpoena here based upon an agency’s administrative activities in this jurisdiction. Maj. Op. at 1203. Because I believe the majority has misread our decision in La Rouche, created a conflict with our decision last term in United States International Trade Commission v. ASAT, Inc., 411 F.3d 245 (D.C.Cir.2005), and fashioned a new requirement for agency enforcement of subpoenas that is inconsistent with the plain meaning of “inquiry is carried on,” I respectfully dissent.
I.
It is worth noting how far the majority has departed from a plain reading of the statutory phrase “inquiry is carried on.” According to the majority, it means that a District of Columbia-based agency may enforce a subpoena here based upon its administrative activities only when an investigation is nationwide because courts should focus on the subject matter of agency investigations. The majority never explains how a plain reading of § 161(2) supports either its requirement of a nationwide investigation or its assertion that courts should focus solely or especially on the place where allegedly unlawful activity occurred.
Section 161(2) authorizes the Board to enforce its subpoenas in “any district court ... within the jurisdiction of which the *1205 inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business .... ” Id. (emphasis added). The common meaning of “inquiry” is “a request for information” or “a systematic official investigation often of a matter of public interest especially] by a body ... with power to compel testimony.” Merriam-Webster’s Dictionary of Law (1996). Where “the statute’s language is plain, the sole function of the court[]-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.” Dodd v. United States, — U.S. -, 125 S.Ct. 2478, 162 L.Ed.2d 348 (2005) (quotation marks omitted). The text of § 161(2) includes jurisdictions in which the Board interviews witnesses as part of its inquiry, jurisdictions containing the target of its inquiry, and jurisdictions in which it carries on investigative or enforcement tasks related to its inquiry. Thus, before today, our cases have recognized that “inquiry is carried on” includes not only where the alleged misconduct occurred, but also where the Board carries on the administrative aspects of its investigation. See ASAT, 411 F.3d at 249-50; La Rouche, 613 F.2d at 857; Fed. Trade Comm’n v. Browning, 435 F.2d 96, 100 n. 7 (D.C.Cir.1970).
Indeed, the other fora available in § 161(2) for Board enforcement suggest that the purpose of the “inquiry is carried on” phrase is to ensure that the Board can seek rapid enforcement in the forum from which it operates its inquiry.[1] By limiting the “inquiry is carried on” prong to the subject matter of the inquiry yet applying it to administrative activities only for nationwide investigations, the majority renders much of § 161(2) insignificant. “It is our duty ‘to give effect, if possible, to every clause and word of a statute.’ ” Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (quoting United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (citation omitted)). Under the second prong of § 161(2), the NLRB can already enforce its subpoena where the subject of the subpoena is “found or resides.” That would almost always include a location where the subject engaged in allegedly unlawful activity, what the majority calls the “subject matter” of the inquiry. Under the majority’s construction of “inquiry is carried on,” however, there seems to be no need for the “found or resides” prong. A plain reading of these clauses together suggests that Congress sought to give the Board authority to enforce its subpoena either where the target of its investigation is found or resides, or where the Board operates its inquiry.
The majority crafts its nationwide requirement not through a construction of the statute, but by using La Rouche, a case that, as I explain below, does not adopt such a requirement. Inherent in the majority’s decision today is a policy choice not found in the statutory text: regardless of the convenience to an agency, an agency should not be able to enforce its subpoena in a jurisdiction where the only nexus to its inquiry is administrative activities, unless its investigation is nationwide in scope. Without the majority’s nationwide requirement, the plain text of § 161(2) would allow the Board to enforce its subpoena here even though this “investigation concerns a single employer and a single dispute related to union-organizing activity at a single plant.” Maj. Op. at 1202. But these types *1206 of “policy arguments regarding the most efficient or convenient enforcement of [agency] subpoenas are best addressed to Congress.” ASAT, 411 F.3d at 252. If Congress shares the majority’s concerns about subpoenas being enforced here only for nationwide investigations, it can certainly add that requirement to the statute.[2]
II.
Last term in ASAT, we analyzed La Rouche and, under facts nearly identical to this ease, upheld the enforcement of a subpoena in the District of Columbia based upon “wholly administrative activities” occurring here. 411 F.3d at 250. Yet nowhere did we conclude that La Rouche employed the majority’s nationwide requirement. Had we done so, we should have declined enforcement because ASAT did not involve a nationwide investigation. 411 F.3d at 246-47.
The majority concludes that it need not apply ASAT here because: (1) ASAT involved three subpoenas, two of which were directed to companies overseas; (2) the investigation there was not limited to activities in California; and (3) ASAT involved a formal hearing being conducted in the District of Columbia. Maj. Op. at 1203. The agency in ASAT, however, quashed the two international subpoenas for improper service and only the California subpoena was at issue in the enforcement proceedings before this Court. 411 F.3d at 247. Nothing in ASAT describes, one way or the other, where the alleged patent infringement under investigation occurred. Moreover, these first two distinguishing facts are culled from the background section of the opinion and none of ASAT’s, analysis finds them to be of any importance. And in ASAT, just like this case, “[t]he subpoena underlying this appeal was issued during an investigation by [an administrative agency] ....” Id. at 246 (emphasis added). The “formal hearing” in ASAT of which the majority speaks refers to an “evidentiary hearing regarding [the] actions [of a party under investigation, which] was held in the District of Columbia” by an ALJ, id. at 249, apparently with regard to whether investigatory subpoenas should be issued. As the majority notes, Cooper Tire & Rubber Company (“Cooper Tire”) litigated the validity of the subpoenas at issue here before the Board in the District of Columbia and the Board issued its decision from here-a proceeding that would not appear to be much different from the evidentiary hearing in ASAT.[3]
ASAT conflicts with much of the majority’s analysis, including the majority’s sug- *1207 gestión that our precedent requires us to “focus on ... the location of the subject matter of the inquiry.” Maj. Op. at 1201 (emphasis in original). In ASAT, looking to “wholly administrative activities,” 411 F.3d at 250, we allowed for enforcement in the District of Columbia of an administrative subpoena directed at a California company because
the Commission’s activities regarding the subpoena at issue were conducted overwhelmingly in the District of Columbia: The subpoena was signed, sealed, and issued in the District of Columbia, the ALJ’s rulings on ASAT’s motion to quash were issued in the District of Columbia, and the Commission’s certification of the subpoena for judicial enforcement occurred in the District of Columbia. Because, as the district court stated, the Commission conducted the administrative activities essential to the investigation in the District of Columbia, the district court here had subject matter jurisdiction ....
411 F.3d at 249 (quotation marks, alterations, and internal citation omitted).
We do not focus on any one place or weigh the ASAT factors and choose our own preferred forum. Instead, “our precedent is clear that an inquiry can be carried on in more than one place.” ASAT, 411 F.3d at 250 (citations omitted). As La Rouche explained, even if an agency “could have brought [an] action to enforce its subpoenas in [another] district,” we acknowledge that “the [agency] chose not to do so, and we honor its choice.” La Rouche, 613 F.2d at 858 n. 9. Interpreting the first part of the La Rouche test and our precedent in Browning, ASAT held that “[a]s long as the [following] factors ... so indicate, it properly can be said that an inquiry is carried on in that place,” ASAT, 411 F.3d at 250:
[1] the place where the Commission held its hearing, [2] the place where it made the decision to authorize the investigation, [3] the place where the subpoenas were issued, [4] the place where its correspondence emanated, [5] the place where the Commission determined that unlawful actions had occurred, [6] the location of the documents and witnesses, and [7] the location of the headquarters of the subpoenaed company.
Id. at 249 (citing La Rouche, 613 F.2d at 857; FTC v. MacArthur, 532 F.2d 1135, 1140 (7th Cir.1976); Browning, 435 F.2d at 99).
Prior to today, with several of the ASAT factors met in this case, we would have concluded that the District of Columbia is one place in which the Board’s “inquiry is carried on.” Here, the NLRB officers investigating Cooper Tire’s alleged contempt operate from the Contempt Branch in the Board’s District of Columbia headquarters. They have made decisions related to this investigation from there. The subpoenas were issued from the Contempt Branch’s District office and were made returnable there. The Contempt Branch will analyze and evaluate the materials subpoenaed from Cooper Tire in that office. The Contempt Branch’s correspondence to the parties has emanated from the District and Cooper Tire has sent materials responsive to prior subpoenas to the District. Cooper Tire moved to quash the subpoenas at issue here before the Board in the District and the Board issued its decision from here.
Despite the majority’s use of La Rouche for its determination to “focus on ... the location of the subject matter of the inquiry,” Maj. Op. at 1201 (emphasis in original), La Rouche also enforced a subpoena in the District of Columbia based upon entirely administrative activities:
[t]he nexus between this jurisdiction and the Commission’s investigation lies in the fact that the District of Columbia, where the Commission maintains its *1208 headquarters, was the hub of the Commission’s investigative activity. It was in this jurisdiction where the Commission authorized the auditing of CTEL’s records and the interviewing of its contributors, where the Commission determined that there was reason to believe that appellants may have violated the federal election laws, where all correspondence regarding those possible violations emanated, and where the subpoenas were in fact issued.
613 F.2d at 857. The majority bases its holding upon the phrase “subject matter” in the first part of the La Rouche test. But in asking “whether the District of Columbia bore a sufficiently reasonable relation to the subject matter of the investigation,” id. at 856-57 (quotation marks omitted), La Rouche did not require that this jurisdiction contain the subject matter of an investigation. It asked whether this jurisdiction bore a “sufficiently reasonable relation” to the subject matter of an investigation. And we know from La Rouche, ASAT, and Browning that the presence of a sufficient number of “wholly administrative activities,” ASAT, 411 F.3d at 250; see La Rouche, 613 F.2d at 857; Browning, 435 F.2d 96, 100 n. 7, will constitute a reasonable relationship with the subject matter of an inquiry. The majority acknowledges a conflict between what Browning and ASAT require and its own reading of La Rouche, but that conflict is one created by the majority and not La Rouche.
Despite La Rouche having enforced an administrative subpoena based upon wholly administrative activities and the ASAT factors having been “derived from La Rouche, MacArthur, and Browning," ASAT, 411 F.3d at 250, in order to determine what inquiry-related activities make this a permissible jurisdiction under the first part of the La Rouche test, the majority concludes that the ASAT factors are no longer controlling. Instead, under the majority’s reading of La Rouche, “the nationwide scope of the investigation [is] determinative,” Maj. Op. at 1203, regarding whether enforcement may be sought in the District of Columbia based upon an agency’s administrative activities.[4] ASAT did not find this holding in La Rouche. Nor did the District Court and Magistrate Judge. Indeed, no court has ever cited La Rouche for that proposition in the nearly 30 years since La Rouche was decided. To the contrary, after analyzing La Rouche, the United States District Court for the District of Columbia has enforced subpoenas involving alleged wrongdoing that takes place in a single state, without finding the majority’s nationwide requirement in La Rouche,[5]
*1209 The portion of La Rouche the majority relies upon addresses a party’s argument that enforcing a subpoena in the District of Columbia against a contributor to a minor political party could raise a chilling of speech problem under the First Amendment and thereby exceed the bound of reasonableness.[6] That concern, the Court noted, was not present in La Rouche because the activities of a national political candidate were at issue. Id. at 857. Thus, when La Rouche discusses the fact that the investigation in that case was nationwide, it does so only in showing that enforcement here as part of a nationwide investigation cannot exceed the bound of reasonableness. The only decision the majority is able to cite as an example of a court declining enforcement because the activity under investigation occurred in another jurisdiction is not to the contrary. As we explained in La Rouche, the District Court in Federal Trade Commission v. Western General Dairies, 432 F.Supp. 31 (N.D.Cal.1977), did not decline enforcement only because, there had not been a nationwide investigation; instead, the District Court did so because an agency had “simply [issued] a subpoena ... from [its] regional office in the Northern District of California” as part of an “investigation [that] was neither nationwide in scope nor related in any manner to the Northern District of California.” La Rouche, 613 F.2d at 858 n. 8 (emphasis added).[7]
Given that the Contempt Branch has carried on a bona fide inquiry of Cooper Tire from- its District of Columbia office, La Rouche next asks whether allowing enforcement here would exceed a bound of reasonableness. “[T]he [bound of reasonableness] criterion [from La Rouche ] resembles a traditional venue analysis that focuses on the convenience of the forum to the parties [and] ... implicates whether that court is a proper venue.” ASAT, 411 F.3d, at 248 (citations omitted).[8] As the Magistrate Judge noted, Cooper directed *1210 the District Court to nothing that would warrant restarting litigation in another venue. Cooper did not claim that litigating the legal sufficiency of these subpoenas in the District of Columbia would be burdensome. Indeed, Cooper previously complied with an earlier round of Board subpoenas by producing documents in the District of Columbia. See NLRB v. Cooper Tire & Rubber Co., No. 03-03898, slip op. at 10 (D.D.C. Mar. 29, 2004). In La Rouche, the presence of a nationwide investigation was simply one factor that demonstrated that an agency did not exceed the bound of reasonableness. Here, Cooper Tire’s prior dealings with the Board in the District suffice to make that same showing. Just as we recently concluded in ASAT, Cooper Tire “has demonstrated no actual hardship of defending itself in the District of Columbia ..., especially since it already had participated in administrative proceedings in the District of Columbia,” ASAT, 411 F.3d at 250, here, at the very least, by responding to the Board’s prior subpoenas. “Hence, it is not difficult to conclude that the [NLRB’s] choice of the District of Columbia to enforce the subpoena is well-within the ‘bound of reasonableness.’” ASAT, 411 F.3d at 250 (quoting La Rouche, 613 F.2d at 857 (quoting MacArthur, 532 F.2d at 1140) (quotation marks omitted)).
III.
The NLRB may be able to avoid the majority’s, nationwide requirement in future cases because its subpoena enforcement statute, unlike the statute at issue in La Rouche and that of many other administrative agencies, also allows it to seek enforcement “within the jurisdiction of which said person guilty of contumacy or refusal to obey ... transacts business .... ” 29 U.S.C. § 161(2) (emphasis added).[9] A large number of agency subpoena enforcement statutes, however, contain only an “inquiry is carried on” clause.[10] *1211 The majority’s decision now places a burden on federal agencies not anticipated by those statutes by requiring agencies that investigate wrongdoing from their District of Columbia offices to enforce their subpoenas in jurisdictions all over the country, unless they can demonstrate that the conduct at issue is nationwide.
Parties that seek to delay agency investigations have a powerful new tool for doing so because there is no ascertainable standard for courts to determine which investigations are “nationwide enough” to allow enforcement in the District of Columbia. The administrative subpoena of a California-based company with an international parent may be enforced in the District of Columbia as part of an unfair trade investigation, ASAT, 411 F.3d at 249, as can an administrative subpoena of a Pennsylvania company issued as part of an investigation into that company’s acquisition of firms in three states, Browning, 435 F.2d at 97-98, as can an administrative subpoena of a New York-based minor political party as part of an investigation into its activities in four states, La Rouche, 613 F.2d at 857-58. But the administrative subpoena of an Ohio-based company’s activities in Ohio and Mississippi cannot be enforced in the District of Columbia. Maj. Op. at 1204.
Cooper Tire has successfully stalled enforcement of the NLRB’s administrative subpoena and has delayed a preliminary investigation by two years. Cooper Tire has forced the NLRB to start anew in Ohio or Mississippi, where Cooper Tire can now file the same briefing it filed in this litigation. As I see no statutory or constitutional basis for placing such a burden on the NLRB, I respectfully dissent.

. The "rapid exercise of the power to investigate” is "the very backbone of an administrative agency’s effectiveness in carrying out the congressionally mandated duties of industry regulation.” FTC v. Texaco, Inc., 555 F.2d 862, 872 (D.C.Cir.1977) (quotation marks and alterations omitted).

. The original bill for what was to become the National Labor Relations Act contained only a "found or resides” clause. Labor Disputes Act, S. 2926, 73d Cong. § 208(2) (as introduced, Feb. 28, 1934). The Senate Committee on Education and Labor added the "inquiry is carried on” clause. S. 2926, 73d Cong. § 208(2) (as reported by S. Comm, on Educ. and Labor, May 10, 1934). In the next Congress, the bill was reintroduced to give the Board even more fora in which to enforce its subpoenas with the addition of a new "transacts business” clause. S.1958, 74th Cong. § 13(2) (as introduced, Feb. 15, 1935). Congress knows how to limit or expand fora for agency enforcement of subpoenas if it wishes to do so. Indeed, as we noted in Browning, the Chairman of the FTC specifically requested that Congress give the FTC the option of enforcing a subpoena in a forum where a corporation or person is found, resides, or transacts business. 435 F.2d at 100-01 (quoting S. 3744, 74th Cong. (1936)). "Congress ... declined to accede to this request,” 435 F.2d at 101, for that agency.

. In any event, ASAT expressly held that we would uphold enforcement in the District based upon the administrative activities occurring here "[e]ven if we were to ignore, as ASAT, Inc. suggests, that the ALJ’s evidentia-ry hearing regarding [the] actions [of the party under investigation] was held in the District of Columbia ....” Id. at 249.

. The majority concludes by "not hold[ing] that subpoena enforcement in the District of Columbia always requires a national investigation” and suggesting that "a national investigation merely works to tip the scale in favor of the District.” Maj. Op. at 1204. Earlier, the majority indicates that La Rouche contains a "clear requirement that an investigation must be nationwide in scope ....” Maj. Op. at 1203. If La Rouche so holds, it is unclear why the majority suggests that a nationwide investigation is less than determinative at the end of its opinion and under what standard the majority would weigh the absence of a nationwide investigation.

. See United States v. Tesoro Petroleum Corp., 503 F.Supp. 868, 872-73 (D.D.C.1980) (analyzing La Rouche and enforcing in this jurisdiction a subpoena of a Texas-based energy company issued as part of an investigation into whether that company had violated regulations of the Department of Energy because "much of the [administrative] activity concerning the ... audit [of the company] has occurred in the District of Columbia”), overruled in part on other grounds by United States v. Hill, 694 F.2d 258 (D.C.Cir.1982); United States v. Stoltz, 525 F.Supp. 617, 618 (D.D.C.1981) (same).

.
[Ajppellants argue that a substantial chilling effect would result if the Commission, as part of a nationwide investigation, could enforce in the District of Columbia subpoenas issued to individual contributors to a minor party across the United States.
It is our view that appellants are correct in suggesting that the chilling effect of the Commission’s choice of its place of inquiry ought to be considered in determining whether the choice falls within the "bound of reasonableness.” In the instant case, however, which of course does not involve subpoenas issued to individual contributors, the record is devoid of any evidence of chill
What the record does reveal is that the Commission’s investigation was not localized in New York, but rather was nationwide in scope.... It is our view that here, as in Browning, [FTC v. Cockrell, 431 F.Supp. 558 (D.D.C.1977)], and [United States v. Firestone Tire & Rubber Co., 455 F.Supp. 1072 (D.D.C.1978)], the Commission was conducting an essentially nationwide investigation from its national office in the District of Columbia and, accordingly, it should be afforded broad discretion in selecting this jurisdiction as its place of inquiry. We cannot say, given the breadth of that discretion and the absence of any evidence of chill, that the Commission exceeded the "bound of reasonableness .... ”
613 F.2d at 857-58 (footnote omitted).

. See Stoltz, 525 F.Supp. at 619 (nothing that the only connection to the Northern District of California in Western General Dairies was an agency’s decision to issue, and make returnable, subpoenas from there and that "[wjhether the [administrative] factors present here would have swayed the district court in California cannot be known”).

. La Rouche, with limited analysis, applied the Seventh Circuit’s statement in MacArthur that even if an agency has demonstrated that the forum it has selected is within the literal reach of its subpoena enforcement statute, an agency’s "choice ... is [still] subject to the bound of reasonableness.” MacArthur, 532 F.2d at 1140 (citing United States v. Morton Salt Co., 338 U.S. 632, 652-53, 70 S.Ct. 357, 94 L.Ed. 401 (1950)); see La Rouche, 613 F.2d at 857. The bound of reasonableness of which MacArthur spoke is not found in the text of the NLRB's subpoena enforcement *1210 statute. Morton Salt addresses the Fourth Amendment's protection from unreasonable searches and seizures. MacArthur did not explain why the Fourth Amendment, and not due process, is the proper vehicle for a litigant to challenge the fairness of litigating in a particular forum. Courts writing on a clean slate and litigants seeking to make a constitutional claim in this area would do well to avoid relying generally on the bound of reasonableness and to focus instead on a specific constitutional or venue claim. Companies and individual litigants with no connection to the District of Columbia can, of course, make constitutional arguments as to why being forced to litigate the validity of a subpoena here would violate due process. See, e.g., Quill Corp. v. North Dakota, 504 U.S. 298, 307, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).

. The Board has not argued the "transacts business” clause of § 161(2) in this case. By including jurisdictions in which a subpoenaed party "transacts business,” Congress employed a well-traveled standard often found in state long-arm personal jurisdiction statutes, which are frequently interpreted to allow for jurisdiction over an entity to the maximum extent permissible with due process. See, e.g., Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C.Cir.2004).

. See, e.g., 2 U.S.C. § 437d(b) (Federal Election Commission); 5 U.S.C. § 1507(a) (Merit Systems Protection Board); 7 U.S.C. § 87f(c) (Department of Agriculture); 12 U.S.C. § 2617(c)(2) (Department of Housing and Urban Development); 15 U.S.C. § 49 (Federal Trade Commission); 15 U.S.C. § 796(b)(3) (Federal Energy Administration); 15 U.S.C. § 2076(c) (Consumer Product Safety Commission); 19 U.S.C. § 1333(b) (United States International Trade Commission); 19 U.S.C. § 1677f(f)(7)(B) (United States International Trade Commission); 19 U.S.C. § 3433(b) (committees authorized by the North American Free Trade Agreement); 22 U.S.C. § 1623(c) (Foreign Claims Settlement Commission of the United States); 25 U.S.C. § 2715(c) (National Indian Gaming Commission); 38 U.S.C. § 5713 (Department of Veterans Affairs); 42 U.S.C. § 5413(d) (Department of Housing and Urban Development); 42 U.S.C. § 6384(c) (Comptroller General); 47 U.S.C. § 409(g) (Federal Communications *1211 Commission); see also 41 U.S.C. § 39 (Department of Labor).