**The UNITED STATES of America, Petitioner,**

v.

**Deane H. STOLTZ, Respondent.**

**Misc. No. 81–0198.**

United States District Court, District of Columbia.

Oct. 27, 1981.

Dayton Lehman, Sp. Asst. U. S. Atty., Washington, D. C., for petitioner.

Michael J. Madigan, Robert F. Klein, Akin, Gump, Strauss, Hauer & Feld, Washington, D. C., for respondent.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This is a petition to enforce a Department of Energy (DOE) subpoena directed to Deane H. Stoltz, the President, during the relevant period, of the Tipperary Corporation, a Texas corporation engaged in the purchase and sale of crude oil. Respondent was ordered to testify in San Antonio, Texas, June 19, 1981, but by agreement of the parties the time was postponed until July 9, 1981, and the place changed to Washington, D. C. The subpoena related that the purpose of respondent's appearance was to testify in the DOE investigation "to determine the compliance" [of three companies, including Tipperary] "with the Mandatory Petroleum Price and Allocation Regulations, 10 C.F.R. Parts 205, 210, 211 and 212. This investigation concerns purchases, sales, exchanges and processing of its refined products during the period September 1976 through September 1977." Respondent appeared at the appointed time and place, but refused to answer any questions, giving no legal basis for such refusal. Respondent avers that he only agreed to appear in Washington, D. C. on that particular date because he had business here, but that he and his company are located in Texas. He also claims that his counsel, prior to the scheduled testimony, repeatedly attempted to obtain additional information on the scope of the inquiry, but none was forthcoming. On advice of counsel, respondent declined to answer questions until he was given enough information to determine whether the subpoena was issued for a lawful purpose and to determine whether fifth amendment rights appropriately could be claimed.

Respondent does not dispute the authority of DOE to issue such subpoenas, or to seek their enforcement in a court of competent jurisdiction. He does oppose the petition for enforcement on three grounds. The first is that the court lacks subject matter jurisdiction. The grant of DOE subpoena power, which is defined by section 9 of the Federal Trade Commission Act (FTCA), gives jurisdiction for subpoena enforcement to the district courts "within the jurisdiction of which [the Commission's] inquiry is carried on." Respondent claims that this is not the jurisdiction where the inquiry is being carried on, since Mr. Stoltz resides in Texas, the subpoena was returnable in San Antonio, the Tipperary Corporation is incorporated and has its principal place of business in Texas, and the other companies mentioned in the subpoena have had business contacts with Tipperary only in Texas. While the subpoena does not refer to any documents, documents with which Mr. Stoltz might wish to refresh his recollection would be located in Texas. Respondent cites cases holding that the activity under investigation must bear a reasonable relationship to the forum, *Federal Trade Com. v. MacArthur*, 532 F.2d 1135, 1140 (7th Cir. 1976); and that jurisdiction does not lie where its only purported justification is that the subpoenas were issued from an office in the forum, and made returnable there, while none of the activity being investigated had any nexus with the judicial district, *Federal Trade Com. v. Western General Dairies Inc.*, 432 F.Supp. 31 (N.D. Cal.1977). However, this Court in *United States v. Tesoro Petroleum Corporation*, 503 F.Supp. 868 (D.D.C.1980), held that the District of Columbia was an appropriate forum, although perhaps not the only appropriate forum, for a subpoena enforcement proceeding under circumstances very similar to those in the instant case. In *Tesoro*, there was a lengthy history of investigation leading to the subpoena in issue, most of it in San Antonio, Texas. Petitioner was located in Texas. Jurisdiction was predicated upon findings that much audit activity also took place in Washington, D. C., that the central headquarters of DOE and the officials ultimately responsible for the enforcement of the regulations in question were

located in Washington, and that all authority to conduct audits of that type emanated from the Washington, D. C. headquarters of DOE. Although investigation had proceeded from the DOE office in Texas, from time to time, DOE headquarters in the District of Columbia would issue instructions to the Texas office regarding the audit. The decision to issue the subpoena and to petition for its enforcement were made in Washington, D. C. Therefore, it was concluded that the inquiry was being carried on in the District of Columbia. Likewise, in this case, the central headquarters for DOE are in this district, and the officials ultimately responsible for enforcing the regulations are here. The control and direction of the investigation has always been retained in the District of Columbia, and the decisions to issue the subpoena and to seek its enforcement were made here.

Respondent has attempted to discredit the affidavit of Jeffrey R. Whieldon of DOE which recites these jurisdictional facts. In his Supplemental Memorandum, respondent argues that the Office of Special Counsel (OSC) of DOE, where Mr. Whieldon is employed, has no authority to investigate him or Tipperary Corporation. OSC, respondent contends, only has authority to investigate the 34 major refiners. Therefore, OSC's location and activities are irrelevant to the proceeding. Respondent also argues that absent evidence that Mr. Whieldon has personal knowledge of the operating procedures, chain of command, and activities of the Office of Special Investigation, (OSI), the office which issued the subpoena, he is incompetent to testify about the investigation involved here.

Petitioner has replied that OSC has been delegated jurisdiction over issues and actions directly affecting major refiners. DOE Delegation Order No. 0204–12 from the Administrator of the Economic Regulatory Administration. The instant investigation is a joint inquiry by OSC and the Office of Enforcement, the body with enforcement authority over all refiners except the 34 major refiners. This subpoena derives from the joint investigation. OSC's interest in Mr. Stoltz's testimony is based upon an ongoing inquiry regarding the compliance of Tesoro Petroleum, a major refiner, with the DOE pricing and allocation regulations in transactions with the companies named in the Stoltz subpoena. Mr. Whieldon, petitioner continues, as Deputy Solicitor for Special Investigations of OSC, is one of the DOE officials directly responsible for coordination and oversight of the joint inquiry, and has personal knowledge concerning the matters in his affidavit.

Petitioner's response disposes of respondent's objections to the Whieldon affidavit. The facts there stated will be accepted by the Court.

■ Although respondent contended at oral argument that the instant case more closely resembles *FTC v. Western General Dairies, Inc., supra*, than it does *Tesoro*, and should be governed by the former case, the Court cannot agree. The Court in *Western General Dairies* refers to none of the factors found to support jurisdiction in *Tesoro* and in this case. The only support for jurisdiction put forth in *Western General Dairies* was that the FTC had chosen to issue the subpoenas from its San Francisco regional office, returnable in San Francisco. Whether the factors present here would have swayed the district court in California cannot be known. Lacking persuasive arguments to the contrary, this Court will follow its own precedent in *Tesoro*, and finds that jurisdiction is proper in the District of Columbia. Although petitioner could have chosen to proceed in Texas, it has the legal right to proceed in this Court.

Respondent's second contention is that the proceeding was improperly instituted before this court in the form of a motion to show cause instead of a complaint. Respondent relies upon *U. S. v. Powell*, 379 U.S. 48, 58 n. 18, 85 S.Ct. 248, 255 n. 18, 13 L.Ed.2d 112 (1964), for the proposition that subpoena enforcement actions, unless otherwise provided by statute, should proceed as normal civil actions, i. e., instituted by complaint, with the Federal Rules of Civil Procedure applicable. Respondent claims that by following this procedure instead, peti-

tioner is attempting to deny respondent the various procedural rights granted by the Federal Rules. Respondent also cites two lower court cases which reject the use of an order to show cause in place of a complaint. *Warren v. Artz*, 18 F.R.D. 11 (S.D.N.Y.1955) and *United States v. Rollnick*, 33 F.Supp. 863, 865 (M.D.Pa.1940). However, neither of these cases involved a subpoena enforcement or other summary proceeding. Petitioner argues that the Supreme Court has clarified its statement in the footnote in *Powell* in *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970), stating that although the Federal Rules of Civil Procedure do apply to subpoena enforcement proceedings, the Rules expressly provide that a district court, by local rule or order, may limit the application of the rules in such a proceeding. Rule 81(a)(3). The footnote in *Powell*, the Supreme Court continues, was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available.

■ The proceeding here, though denominated an order to show cause rather than a complaint, and thereby shortening the time limits involved, is appropriate for a subpoena enforcement proceeding. This jurisdiction has recognized the summary nature of such proceedings, and severely restricts procedures, such as discovery, applicable to non-summary civil actions under the Federal Rules. *Securities & Exchange Com. v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Respondent is being afforded adequate procedural rights, including notice and a hearing. The petition will not be dismissed on this ground.

Respondent's third contention is that petitioner has not made the required showing that the subpoena was issued for a lawfully authorized purpose, and that the evidence sought is relevant to that lawful purpose. Respondent contends that the subpoena does not sufficiently define the purpose, nature and scope of the investigation to enable determination of the relevance of the evidence sought or whether the subpoena is unduly broad. The subpoena as worded, argues respondent, demands testimony regarding virtually all of the activities of the three companies that might relate to any one of the entire panoply of DOE price and allocation rules. The description, respondent contends, is so broad as to be meaningless.

The Court of Appeals for the District of Columbia Circuit, however, has recently given broad latitude to agencies in stating the scope of investigations. *Federal Trade Com. v. Carter*, 636 F.2d 781 (D.C. Cir. 1980). There the FTC stated the purpose of an investigation as to determine whether certain companies in the cigarette business may have been engaged in the use of unfair or deceptive acts or practices in the advertising, promotion, sale, etc. of cigarettes in violation of the Federal Trade Commission Act, citing the statutory authority for the investigation. The petitioners claimed that this statement was overly broad, rendering impossible a determination of the relevance of the documentary items sought by the subpoenas. The Court held that an agency will be deemed to have given adequate notice of the purposes of an investigation by reciting its statutory duties when the statutes themselves alert the parties to the purposes of the investigation. It distinguishes *Civil Aeronautics Board v. United Airlines*, 542 F.2d 394 (7th Cir. 1976), relied upon by respondent in the instant case, because that case involved an appearance by agents of the CAB at the offices of United Airlines, demanding to see everything on the premises. Fourth amendment considerations would apply to such a search which do not apply to a subpoena enforcement proceeding, the Court of Appeals stated. Also, the CAB refused to state any purpose for the investigation other than its general statutory authority, whereas the subject of the FTC investigation and the specific statutory bases of authority were identified. Reference to the statutory authority itself would give notice of what the FTC was investigating. The Court held that although at that point it could not find any of the documents requested "plainly

irrelevant" to the lawful purpose of the investigation, it would allow the respondents to raise specific objections to the production of certain documents. It would be possible that as to some documents, more of a showing of relevance would be required of the FTC.

█ Likewise, in our case, the subpoena gives fair notice of the subject of investigation, namely dealings in crude oil during a defined period of time (one year), which may have violated the mandatory petroleum price and allocation regulations. Although the regulations are extensive, respondent may determine from them what conduct constitutes violations and therefore may be under investigation. Petitioner is not required to point to specific suspected violations to justify an investigation. Since no documents are requested, it is not possible to determine the relevance of any particular thing requested. Respondent is merely required to testify on the general subject. It cannot be determined in advance whether the questions asked may intrude into areas which are not relevant. While respondent always has the right to object to specific questions, his presence to testify on the general subject matter will be ordered. Should he determine during the course of that testimony that his fifth amendment rights might be exercised in a declination to testify as to certain matters, he is afforded the law's protection which casts its mantle only pursuant to appropriate invocation by the respondent directed to particular inquiries.

█ Finally, respondent has requested that if the Court finds that it has jurisdiction, in the interests of justice and for the convenience of the parties, this matter be transferred to the Western District of Texas. Petitioner indicated at oral argument, and it was not disputed, that the entire investigation is being carried on in the District of Columbia, there being no activity in DOE regional offices, and that it made its original subpoena returnable in Texas only for the convenience of respondent. Although a Texas forum would clearly be more convenient for respondent, the Court will not disturb petitioner's choice of forum when all convenience factors with respect to petitioner favor the District of Columbia. However, since the Department of Energy graciously made its subpoena returnable in San Antonio, Texas for the convenience of respondent, and an appearance in Washington, D. C. was agreed to only for a specific date when respondent was to be in this city on business, the subpoena will be enforced in its original form, returnable in San Antonio, Texas. Although the proposed order submitted by petitioner requires the respondent to appear to testify "at such time and place as may hereafter be fixed by any proper officer or employee of the Department of Energy," petitioner has advanced no argument as to why the location stated in the original subpoena should be changed.

Accordingly, it is this 27th day of October, 1981, hereby

ORDERED that Deane H. Stoltz obey fully the subpoena of May 28, 1981 ordering him to appear and testify in San Antonio, Texas; a new date and the exact location to be fixed by any proper officer or employee of the Department of Energy.